UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

TERRY WALDEN and JEFFREY WALKER            PLAINTIFFS

v.                                   CIVIL ACTION NO. 3:09-CV-306-S

BULLITT COUNTY, KENTUCKY, et al.                     DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the court on motion of the defendants, Bullitt County, Donnie Tinnell, in his individual and official capacity as Bullitt County Sheriff, and C. Scott McGaha (""McGaha"), in his individual and official capacity as Deputy Sheriff of Bullitt County, for summary judgment (DN 38) and the motion of defendants, Darell Fred Paul ("Paul"), in his individual and official capacity as Chief of Police of Lebanon Junction, and Steve Hamilton ("Hamilton"), in his individual and official capacity as Assistant Chief of Police of Lebanon Junction, for summary judgment (DN 39), (collectively, "Defendants"). For the reasons set forth below, the motions will be granted in part and denied in part.

I. Background

Plaintiffs filed this action under 42 U.S.C. § 1983, asserting claims of false arrest, false imprisonment, malicious prosecution, defamation, libel, slander, intentional infliction of emotional distress, and conversion (DN 1). Discovery has closed and Defendants' motions for summary judgment on all claims (DN 38, 39) are now before the court.

The following facts are established by discovery. Rodney Richardson ("Richardson") gave tombstones to plaintiff Terry Walden ("Walden"), his brother-in-law, who consigned them to Eileen

Santangelo ("Santangelo"), owner of Rest Lawn Memorial Gardens. When Santangelo failed to make payments, plaintiff Jeffrey Walker ("Walker") assisted Walden in retrieving the tombstones from Rest Lawn Memorial Gardens without Santangelo's knowledge. The two left the tombstones on Walker's property until Walden could arrange to pick them up. Around June 8, Richardson reported tombstones missing from his business to defendant Hamilton, Assistant Chief of Police of the Lebanon Junction Police Department. On June 13, Walker's neighbor, Elizabeth Lee called the police and reported to defendant McGaha that she had seen suspicious activity. She reported to McGaha that Walker and others had unloaded tombstones onto Walker's property late at night. McGaha contacted Hamilton because Walker's property was located in Lebanon Junction. The two conferred and discussed the tombstones with Richardson. Santangelo also reported a theft of tombstones and faxed the police in regards to the theft. The fax included Walden's name but provided no contact information for Walden and did not specifically indicate ownership of the tombstones by Walden.

On June 16, Richardson met the Hamilton and McGaha on Walker's property and identified the tombstones as his. These tombstones were not in fact the same tombstones Richardson had originally reported missing, but he did not make Hamilton or McGaha aware of this fact. Richardson then hauled the tombstones off of Walker's property.

Hamilton and McGaha searched Walker's residence for evidence related to the tombstones before Walker arrived home. Walker asserted to the police that Walden owned the tombstones and that he was in rightful possession and subsequently provided a statement at the police station to that affect. The officers arrested Walker pursuant to their search warrant and the identification of the

tombstones by Richardson. The media was present during the arrest and Hamilton made some comments to the media. Walker was released from jail after being held for one day.

On the basis of Walker's statements about Walden's involvement, the police obtained an arrest warrant for Walden. On June 17, Walden, having learned of Walker's arrest, entered the police station in order to provide information regarding the ownership of the tombstones. Walden also provided a statement to the police asserting rightful ownership of the tombstones. While Walden was at the station, the detectives arrested Walden in the presence of media and held him in jail for seven days.

Upon learning of Walden's involvement, Richardson told police he did not wish to pursue the matter further and refused to stipulate to probable cause. On July 17, because of the refusal to stipulate, a probable cause hearing was held. At the probable cause hearing, Richardson admitted that the tombstones on Walker's property which were the basis for Walker and Walden's arrest were not the same tombstones Richardson originally reported missing. Finding sufficient probable cause, the judge waived the matter to the grand jury. Richardson did not wish to prosecute and ultimately, the grand jury did not indict Walden or Walker, dismissing all counts.

## II. Analysis

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247-28, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id*. at 248. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *First Nat'l. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Id*. at 587; *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979).

    A. <u>Constitutional Claims</u>

The first key issue is whether probable cause existed at the time of the arrest of each plaintiff. Defendants argue that because the state court determined probable cause existed in a preliminary hearing and waived the charges to the Grand Jury, Plaintiffs are now barred from re-litigating probable cause. "A state-court judgment is given the same preclusive effect that it would have under the law of the state in which the judgment was rendered." *Buttino v. City of Hamtramch*, 87 Fed. Appx. 499, 502, 2004 WL 74655 (6th Cir. 2004). This court "must apply the state law of collateral estoppel when deciding whether the state court's determination of probable cause at the preliminary hearing has preclusive effect in this § 1983 action." *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) (citing *Haring v. Prosise*, 462 U.S. 306, 313, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983)). Under Kentucky law, four elements must be present: (1) the issue in the second case must be the same as the issue in the first case; (2) the issue must have been actually litigated; (3) actually

decided; and (4) necessary to the court's judgment. *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 374 (Ky. 2010). Further, the Sixth Circuit has held that "where a state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action." *Buttino*, 87 Fed. Appx. at 503. Therefore, because probable cause was established in the state court hearing, plaintiffs are prevented from relitigating it in this action. *See Carter v. Porter*, 2011 WL 778408 at *6 n. 7 (E.D. Ky. 2011) ("such a judicial determination of probable cause for further prosecution, where both parties participated in the underlying proceeding, would shield officers from malicious prosecution claims").

Plaintiffs argue Hamilton and McGaha provided false information at the state court probable cause hearing and intentionally misled the magistrate. It is true that the state court's determination of probable cause will have "no preclusive effect" if evidence is presented supporting a claim that "is based on a police officer's supplying false information to establish probable cause." *Peet v. City of Detroit*, 502 F.3d 557, 566 (6th Cir. 2007); *Darrah,* 255 F.3d at 311. However, no evidence has been provided to substantiate these claims and without evidence that a police officer supplied false information to establish probable cause, plaintiffs' § 1983 claims fail. *See Peet*, 502 F.3d at 566. Further, Richardson's testimony at the preliminary hearing to determine probable cause included that the gravestones recovered the day of Walker's arrest were not in fact the same gravestones he originally reported missing. Defendants' Motion for Summary Judgment (DN 38), Exhibit E, p. 41-42. The court heard this testimony and determined probable cause still existed to charge plaintiffs. Plaintiffs are now prevented from relitigating probable cause in their § 1983 action.

Further, even considering the record evidence in the light most favorable to plaintiffs, probable cause existed at the time of the arrests in this case. The Supreme Court stated in *Beck v. Ohio* that probable cause existed when the police have "reasonably trustworthy information [that is] sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense" based on "the facts and circumstances within [the police's] knowledge" at the moment of the challenged conduct. 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964); *see also Peet*, 502 F.3d at 563-64 (quoting *Beck*). At the time of the arrests, Hamilton and McGaha were reasonable in finding probable cause existed with the knowledge they possessed. Walker and Walden both allege they provided credible explanations about the ownership of the gravestones, which Hamilton or McGaha should have investigated. Although police may take into consideration a suspect's explanation of suspicious behavior, "[a] policeman, however, is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Criss v. City of Kent*, 867 F.2d 259 (6th Cir. 1988).[1]

Plaintiffs' § 1983 claims of false arrest, false imprisonment, and malicious prosecution fail against all defendants because probable cause existed for the arrests. *See Buttino*, 87 Fed. Appx. at 502 ("[plaintiff] must prove a lack of probable cause in order to prevail on his claims of illegal arrest, malicious prosecution and deprivation of due process"); *Criss v. City of Kent*, 867 F.2d 259,

---

[1] There is Sixth Circuit precedent that suggests a police officer may be under some duty to make a reasonable investigation in determining whether adequate probable cause exists for an arrest. *See Gardenhire v. Schubert*, 205 F.3d 303, 328 (6th Cir. 2000). This case is distinguishable because *Gardenhire* involved a warrantless arrest and in this case, a search warrant was executed regarding the tomb stones which led to Walker's arrest and an arrest warrant was obtained the day of Walden's arrest. *See Wolf v. Winlock*, 34 Fed. Appx. 457 (6th Cir. 2002) (distinguishing *Gardenhire* "because it involved a warrantless arrest").

262 (6th Cir. 1988) ("the Fourth Amendment requires the states to provide a fair and reliable determination of probably cause as a condition for any significant potential restraint of liberty. Thus, an arrest without a warrant does not violate the Fourth Amendment if probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law"). Summary judgment in favor of Defendants is proper on these claims.

Finding probable cause for the arrests also establishes that defendants Hamilton, McGaha, Tinnell and Paul are entitled to qualified immunity. *Russo v. Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992) (government officials and "police officers enjoy qualified immunity from suits brought under § 1983"). Qualified immunity applies because no constitutional violation can be shown where an arrest is based on probable cause. *Peet*, 502 F.3d at 566 (6th Cir. 2007); *Wolf v. Winlock*, 34 Fed. Appx. 457, 461-63, 2002 WL 726486 (6th Cir. 2002). To analyze qualified immunity, the court must examine "two closely linked questions: whether the defendant violated the plaintiff's rights and whether those rights were clearly established at the time of the alleged violation." *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. Where government officials have not violated clearly established constitutional rights, they are entitled to qualified immunity. *Pearson v. Callahan*, 55 U.S. 223, 243-44, 129 S. Ct. 808, 822, 172 L. Ed. 2d 565 (2009). The individual defendants are entitled to qualified immunity in this action, because as discussed, probable cause existed for the arrests of both plaintiffs and no Fourth Amendment rights were violated.

B. State Law Claims

The Supreme Court has instructed that "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988). In light of our disposition of the federal claims in this action, we exercise our discretion in declining to address plaintiffs' pendent state law claims under the authority of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) and its progeny. *See also Merrifield v. Board of County Com'rs for County of Santa Fe*, __ F.3d __, 2011 WL 3000687 at *12 (10th Cir. 2011) (holding district court should have dismissed state law claims once it dismissed federal constitutional claims in a § 1983 wrongful termination suit, even though the dismissal would require the parties to rebrief the state-law issues); *D.J.M. ex. rel. v. Hannibal Public School Dist. No.* 60, 647 F.3d 754, 767 (8th Cir. 2011) (district court did not abuse discretion in declining to rule on state law claims even after they were briefed and discovery completed, because "[a]fter the district court entered summary judgment on [plaintiff's] § 1983 claim, it had effectively dismissed all claims over which it had original jurisdiction"); *Rivera v. Murphy*, 979 F.2d 259, 264 (1st Cir. 1992) ("[e]ven had the court been correct in its grant of summary judgment on the § 1983 claim, it would not have been proper to grant summary judgment on the pendent state law claims").

A separate order will be entered this date in accordance with this opinion.

September 30, 2011

**Charles R. Simpson III, Judge**
**United States District Court**